IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| SORAYA DIASE COFFELT | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-34 |
| | : | |
| GOVERNMENT EMPLOYEES' RETIREMENT SYSTEM OF THE VIRGIN ISLANDS | : : : | |

# MEMORANDUM

**Judge Juan R. Sánchez**                                                                           **May 2, 2025**

      Plaintiff Soraya Diase Coffelt, a retired Judge of the Superior Court of the Virgin Islands, brings this action against the Government Employees' Retirement System of the Virgin Islands (GERS), alleging GERS has violated the Contract Clause of the United States Constitution, as incorporated by the Revised Organic Act of 1954, by denying her a judicial service retirement annuity to which she claims she has a vested right. The annuity in question is a "Judges' Pension" that was created by statute in the year after Judge Coffelt completed her judicial service and left the bench. GERS maintains Judge Coffelt is not entitled to an annuity because she has not made the additional contributions necessary to receive the statute's increased annuity benefits retroactively and has not submitted a written annuity application. The parties have filed cross-motions for summary judgment. Because the Court concludes, based on the undisputed facts, that Judge Coffelt does not have a vested right to a judicial service retirement annuity as a matter of law, the Court will deny Judge Coffelt's motion, grant GERS's motion, and enter judgment in favor of GERS.

**BACKGROUND**[1]

Judge Coffelt served as a Judge of the Superior Court of the Virgin Islands (then known as the Territorial Court) from January 14, 1994 until May 12, 2000, earning an annual salary of $100,000. ECF No. 133 at 2. During Judge Coffelt's tenure on the court, judges were members of GERS, the retirement and benefit system for officials and employees of the Government of the Virgin Islands, with no separate pension program specifically for judges. As a GERS member, Judge Coffelt made contributions at the rate of 8% of the first $65,000 of her salary[2] from March 16, 1995 to June 1, 2000.[3] *See id.*; Def.'s Ex. C, ECF No. 120-3. GERS maintains that Judge Coffelt contributed a total of $29,230.75 during her tenure on the Superior Court. Judge Coffelt disputes that this total is accurate.[4]

---

[1] Except as noted, the following facts are undisputed.

[2] By statute, "the maximum amount of compensation to be used for contributions by the members" during Judge Coffelt's tenure was $65,000, 3 V.I.C. § 702(n) (2000), and the applicable contribution rate was 8%, *id.* § 718(b)(5). Thus, the statutory maximum annual contribution was 8% of $65,000—or $5,200.

[3] It is not clear why the contributions did not begin until March 16, 1995, more than a year after the start of Judge Coffelt's judicial service in January 1994, as the statute in effect when she began her term provided that "[c]ontributions by [a government employee] shall begin upon completion of one year of service." 3 V.I.C. § 703(b) (1994). The statute was subsequently amended in August 1994 to provide that contributions would begin "upon completion of one month of service." 3 V.I.C. § 703(b) (1995) (incorporating amendment from Act No. 6007).

[4] GERS's calculation is based on data provided by the Department of Finance showing the amount of each biweekly contribution during the relevant time frame. Def.'s Ex. B ¶ 4, ECF No. 120-2; Def.'s Ex. C, ECF No. 120-3. At her deposition, GERS's 30(b)(6) designee explained that because of a "glitch in the system," certain information in the spreadsheets produced by GERS is incorrect. For example, a spreadsheet displaying Judge Coffelt's biweekly contributions lists January 10, 2019 as the "pay date" for each one, even though the contributions were made between 1994 and 2000. Caines-Sasso Dep. at 26-28, 57, ECF No. 133-3. Judge Coffelt disputes the accuracy of GERS's calculation based on the designee's testimony that GERS's records contain errors and because GERS has never provided any independent verification of its calculation, such as canceled checks from the Superior Court to GERS, records of electronic transfers, etc.

Under the system in place during Judge Coffelt's judicial service, a member of GERS could obtain a service retirement annuity (1) upon reaching the age of 70 with ten years of credited service, 3 V.I.C. § 705(c) (2000), (2) upon completing 30 years of credited service, regardless of age, *id.* § 705(d), (3) upon reaching the age of 60 with ten years of credited service, *id.*, or (4) upon reaching the age of 50 with ten years of credited service, subject to a reduction of ".325 of one percent for each month, or fraction thereof, that the member's age is less than sixty (60) years," *id.* When Judge Coffelt left the bench in May 2000, she did not meet the minimum service requirement, as she did not have ten years of credited service as a government employee. She was thus ineligible, under the system in place at that time, to receive a pension upon reaching the age of 50 or 60.[5] Upon her withdrawal from service, she had the option to receive a refund of her accumulated contributions or, if she did not receive a refund, to receive credit for the service in the event she were to return to government service in the future. *Id.* § 713(a).

In December 2000, seven months after Judge Coffelt left the bench, the Virgin Islands Legislature passed Act No. 6391, the Fiscal Year 2001 Omnibus Authorization Act. Among other things, the Act amended Chapter 27 of Title 3 of the Virgin Islands Code to add a new section 733, codified at 3 V.I.C. § 733, which created a "Judges' Pension" governing the retirement benefits of members of the Judiciary specifically, effective February 1, 2001.

The statute made membership in the system optional for members of the Judiciary and provided a more generous annuity with a higher contribution rate. Under the system in place when

---

[5] At oral argument, Judge Coffelt did not agree that she would not have been eligible for an annuity under the general GERS system in place during her tenure as a judge, noting she made all contributions required of her under that system. The conditions for an annuity are dictated by statute, however, and include a minimum credited service requirement of ten years pursuant to 3 V.I.C. § 705(d) (2000). Judge Coffelt has produced no evidence suggesting she meets the ten-year credited service requirement.

3

Judge Coffelt left the bench in 2000, an annuity was "computed at the rate of 2.5% of average compensation times the number of years of credited service, not to exceed 40 years"—or, for an employee meeting the ten-year minimum credited service requirement, 25% of average compensation. 3 V.I.C. § 706(a) (2000); *see also id.* § 702(n) (providing "the maximum amount of compensation to be used . . . in the computation of any annuity or benefit hereunder shall be $65,000"). As noted, however, the annuity amount would be reduced for employees who retired after reaching age 50 but before reaching age 60. *Id.* § 705(d). Under § 733, in contrast, judges were eligible to receive a judicial annuity at age 50 with no reduction, and the annuity rate was based on the number of terms the judge completed:

> (e) Notwithstanding any other law, the conditions governing eligibility for service retirement for any member of the Judiciary and the amount of the annuity shall be as stated in this section as follows;
>
> (1) Vesting in a service retirement annuity shall attach upon completion of one (1) term. Any member shall be eligible for service retirement beginning at age 50 on a judicial annuity equal to the following rates:
>
> > (A) after one (1) term in office, 30% of his compensation while in office;
> >
> > (B) after two (2) terms in office 60% of his compensation while in office;
> >
> > (C) after three (3) terms in office, 90% of compensation while in office; and
> >
> > (D) after 20 years in office, 100% of his compensation while in office.
>
> . . .

3 V.I.C. § 733(e) (2001).

The more generous annuity was accompanied by a higher contribution rate. In lieu of the 8% rate applied to a maximum of $65,000, judges were required to contribute 11% of their annual compensation, and judges who had completed six years of service and wished to receive pension

4

credit in the new system for their prior service were required to make contributions at the 11% level retroactively:

> (c) Participation in the system on the part of any member of the Judiciary shall continue until the date he becomes an annuitant, dies or accepts a refund of his contributions thereto.
>
> Notwithstanding the provisions of this chapter, proportionate contributions shall be made by each member of the Judiciary who has completed six years of service if the member elects to receive pension credit for any period for which such member was not covered by the system. However, the proportionate contributions shall be made retroactively for the respective period of service, with the contributions being the amount of 11% of the members' annual compensation.[6]
>
> (d) The rate of contribution to the system on the part of a member of the Judiciary who becomes a member of the system shall be 11% of his annual compensation. This rate shall apply to service rendered beginning from the first date the member takes the oath of office as a member of the Territorial Court of the Virgin Islands. . . .

*Id.* § 733(c), (d).

After § 733 was enacted, Judge Coffelt made several attempts to avail herself of the benefits of the new system, but GERS was unresponsive and failed to provide her with any information as to what was required of her. On April 2, 2001, Judge Coffelt wrote to then-GERS Administrator Laurence F. Bryan stating the letter was her "application for membership in the Retirement System as a member of the judiciary from January 14, 1994 to May 12, 2000, pursuant to Title 3 of the Virgin Islands Code § 733 et seq." Pl.'s Ex. C, ECF No. 123-4. The letter asked Bryan to "[p]lease inform me of the amount of contribution I need to pay in order to satisfy my coverage." *Id.*[7]

---

[6] The contribution rate under § 733(c) has since been increased to 15%, but GERS does not contend the increased rate applies to Judge Coffelt.

[7] Judge Coffelt later testified that when she wrote to Bryan in April 2001, she did not know whether a contribution would be required under the new law. Coffelt Dep. 9-10, 58-59, ECF No. 120-1.

Judge Coffelt never heard back from Bryan, but a few months later, she received a phone call from Alphonso Nibbs, an attorney for GERS.[8]  Coffelt Dep. 10, ECF No. 120-1.  Attorney Nibbs told Judge Coffelt that GERS was "going back to the [L]egislature," as there were "some issues they wanted addressed," but said he would get back to her once they had more information.  *Id.* at 10-11[9]

On January 30, 2002, having heard nothing further, Judge Coffelt sent Attorney Nibbs a letter enclosing her earlier letter to Bryan.  Pl.'s Ex. D, ECF No. 123-5.  Judge Coffelt noted she had previously "requested information as to the amount of my contribution in order to satisfy my coverage," and stated she "would appreciate receiving the information requested as soon as possible."  *Id.*  She again received no response, despite calling and leaving messages for Attorney Nibbs several times.  Coffelt Dep. 14, ECF No. 123-12.

In August 2008, Judge Coffelt reached the age of 50.  *Id.* at 15.  Although 50 is the age of eligibility for a judicial service retirement annuity under § 733(e), Judge Coffelt did not seek to claim a retirement annuity at that time, believing GERS would hold the money for her and invest it.  Coffelt Dep. 18-19, ECF No. 120-1.  For the next ten years, she did not communicate with anyone at GERS about her retirement benefits.  *Id.* at 15.[10]

---

[8] Alphonso Nibbs is one of two GERS employees with the surname "Nibbs" with whom Judge Coffelt interacted regarding her pension.  To avoid confusion, Alphonso Nibbs is referred to herein as "Attorney Nibbs."  Attorney Nibbs passed away in 2007, before the start of this litigation.  *See* Coffelt Dep. 14, ECF No. 123-12.

[9] There is no information in the record as to what issues GERS wanted the Legislature to address.

[10] At her deposition, Judge Coffelt explained she had a number of family challenges to contend with during this period, including the illness of her husband, for whom she was a caregiver, the death of her father, and her mother's illness.  Coffelt Dep. 19-20, ECF No. 120-1.

Judge Coffelt eventually had some form of communication with Shoran Caines-Sasso, GERS's Director of Member Services, in 2018 or 2019.[11] On May 6, 2019, Austin Nibbs, who was then the Administrator of GERS, wrote to Judge Coffelt in response to her inquiry and informed her she was "not currently eligible for an annuity." Pl.'s Ex. E, ECF No. 123-6. The letter explained Judge Coffelt was ineligible because her annuity was not adequately financed pursuant to 3 V.I.C. § 733(k), a provision added to the statute in 2015, which states that "[n]o credited service benefit may be paid to any member of the judiciary until the System has received retirement contributions payments from the employer and employee." *Id.* The letter did not mention § 733's 11% contribution rate but instead stated—incorrectly—that the annuity was not adequately funded because Judge Coffelt had contributed only $5,200 per year during her tenure as a judge, when, at the time, "members of the judiciary were paying 8% of their salary each year which would equate to $8,000.00 per year."[12] *Id.*

Because the letter was sent to Judge Coffelt at an outdated Post Office Box address, she did not receive it—and was not aware of it—until Caines-Sasso emailed it to her two and a half years later, on December 22, 2021. Pl.'s Ex. F, ECF No. 123-7. A week after receiving the letter, Judge Coffelt responded, questioning the accuracy of GERS's calculation of her contributions and requesting updated calculations, a breakdown of the amount she and the court each paid into the system during her tenure on a monthly and annual basis, and documentation for the 8%

---

[11] In an internal email to her colleagues at GERS on January 7, 2019, Caines-Sasso reported having received an inquiry from Judge Coffelt "in reference to her eligibility to receive a retirement annuity." Pl.'s Ex. H at GERS000097, ECF No. 123-9.

[12] GERS concedes the statement that members of the judiciary were contributing $8,000 per year is incorrect. *See* ECF No. 131 at 2. As discussed above, the 8% contribution rate was applied to a maximum compensation amount of $65,000—resulting in a maximum annual contribution of $5,200. *See* n.2, *supra*.

contribution rate. She also requested that GERS inform her, after re-calculating her past contributions, "what amount I need to pay into the system to now be eligible for pension benefits." *Id.* GERS did not respond.

Instead, a week later, on January 5, 2022, Judge Coffelt received a second letter, dated December 6, 2021, from Administrator Nibbs. Coffelt Decl. ¶ 10, ECF No. 123-1. The January 5, 2022 letter was substantially identical to Nibbs's May 6, 2019 letter, in that it explained Judge Coffelt was not eligible for an annuity under § 733(k) because she had failed to adequately fund her pension by contributing only $5,200 per year instead of the $8,000 allegedly required. Pl.'s Ex. G, ECF No. 123-8. The letter added that GERS would process a refund of $29,230.75, representing the contributions in her GERS account, and enclosed a refund form. *Id.*; Coffelt Decl. ¶ 10, ECF No. 123-1.

On March 11, 2022, counsel for Judge Coffelt sent a demand letter to GERS. Pl.'s Ex. L, ECF No. 123-13. The letter argued that with the enactment of § 733 in 2001, Judge Coffelt acquired a vested right to a judicial service retirement annuity that attached on the completion of her term on May 10, 2000, nine months before the statute took effect. *Id.* Counsel further argued that because Judge Coffelt's service retirement annuity vested in 2000, GERS was prohibited from reducing or impairing it and could not rely on a later-enacted statutory amendment—§ 733(k)—to do so. The letter demanded that GERS provide a full accounting of all contributions made to GERS by or on behalf of Judge Coffelt, as requested in her December 29, 2021 letter. *Id.* It also demanded payment of the full value of Judge Coffelt's past-due vested service retirement annuity from August 2008, when she became eligible to receive it, to the present (more than $390,000), as well as prospective semi-monthly annuity payments. *Id.*

8

On April 6, 2022, GERS responded to the demand letter, again taking the position the annuity was underfunded, this time because Judge Coffelt failed to contribute 11% of her salary, or $11,000 per year. Pl.'s Ex. M, ECF No. 123-14. The letter stated that in order to receive an annuity, Judge Coffelt would have to pay $42,680.27[13] in employee contributions before she could begin receiving benefits, noting that without payment of the contributions, Judge Coffelt would "not have the credited service required to receive an annuity." *Id.* In lieu of § 733(k), the letter cited 3 V.I.C. § 704(m), a similar but earlier-enacted provision which states that "[e]mployee or employer contributions for service credit on which benefits are to be calculated must be paid prior to the date of issuance of the first retirement benefits payment."[14] *Id.* The letter again offered Judge Coffelt the option to request a refund of the $29,230.75 in contributions she had made to date.

The following month, Judge Coffelt filed this civil action against GERS, asserting that, as a retired Superior Court Judge and a member of GERS, she has a contractual relationship with GERS defined by the terms of 3 V.I.C. § 733, whose terms GERS breached by failing and refusing to pay her vested service retirement annuity beginning in August 2008, when she turned 50. The Complaint also asserts the failure to pay Judge Coffelt the vested service retirement annuity constitutes a substantial impairment of her contractual relationship with GERS, in violation of the

---

[13] This calculation included a 6% "lost investment opportunity" fee and a 1.5% "delinquency fee." *See* Pl.'s Ex. H at GERS000093, ECF No. 123-9. GERS no longer contends these amounts are required. *See* Def.'s Ex. D, ECF No. 120-4.

[14] The letter also cited 3 V.I.C. § 704(*l*), which provides that "[i]f the employer fails or refuses to remit contributions on behalf of any employee for any period wherein service credit is being or has been sought, the employee may remit to the system a sum that equals the employer's and the employee's contributions for the period of credited service he has elected to obtain." Subsections (*l*) and (m) were both added to § 704 in 2005.

Contract Clause of the United States Constitution, as incorporated by the Revised Organic Act of 1954, 48 U.S.C. § 1561. Judge Coffelt seeks a declaration that (1) she has a vested right to a service retirement annuity of 30% of her annual salary of $100,000; (2) she became eligible to receive the vested service retirement annuity in semi-monthly payments of $1,250 on August 29, 2008; (3) the past-due amount of the vested service retirement annuity due to her as of the date the Complaint was filed is $410,000; and (4) she is entitled to ongoing semi-monthly payments of $1,250 under her vested service retirement annuity. She also seeks attorney's fees and costs under 5 V.I.C. § 541.

GERS denies that Judge Coffelt acquired a vested right to a judicial service retirement annuity based solely on the enactment of § 733. Rather, GERS contends Judge Coffelt's right to an annuity under the statute is conditional upon her making additional retroactive employee contributions, as required under § 733(c) and (d), and submitting a written application for an annuity in care of the Administrator, as required under 3 V.I.C. § 705(a).[15]

After a period of discovery, Judge Coffelt and GERS each moved for summary judgment. The Court held oral argument on the motions via videoconference on July 18, 2024.

---

[15] Specifically, GERS maintains that to obtain an annuity under § 733, Judge Coffelt must make additional contributions totaling $40,405.36, calculated by applying the 11% contribution rate to her salary during her entire judicial tenure—from January 14, 1994 to May 12, 2000—and then subtracting the contributions she made while in office. Def.'s Ex. B ¶ 6, ECF No. 120-2; Def.'s Ex. D, ECF No. 120-4. GERS contends that upon making the required contributions and submitting the application required by § 705(a), Judge Coffelt would be entitled to receive an annuity prospectively only. Judge Coffelt disputes GERS's calculation, which is $702.78 higher than GERS's April 2022 calculation of her alleged contribution shortfall. *See* ECF No. 132 at 14-15; ECF No. 133 at 4 n.1. This dispute is not material to the outcome as Judge Coffelt's position is that she is entitled to an annuity without making any additional contributions. The Court notes, however, that GERS's previous (and lower) calculation was based on judicial service period of *February 7, 1994* to May 12, 2000, Pl.'s Ex. M, ECF No. 133-15, whereas the current calculation is based on a judicial service period of *January 14, 1994* to May 12, 2000.

10

**DISCUSSION**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, a court must "view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Where, as here, cross-motions for summary judgment are filed, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir 2016) (citation omitted).

The Contract Clause of the United States Constitution was made applicable to the Virgin Islands through the Bill of Rights in the Revised Organic Act of 1954, 48 U.S.C. § 1561, which provides, in relevant part, that "[n]o law impairing the obligation of contracts shall be enacted." *Nieves v. Hess Oil V.I. Corp.*, 819 F.2d 1237, 1243 (3d Cir. 1987) (quoting 48 U.S.C. § 1561). To prove a violation of the Contract Clause, "a plaintiff must demonstrate that a 'change in state law has operated as a substantial impairment of a contractual relationship.'" *Transp. Workers Union of Am., Local 290 ex rel. Fabio v. Se. Pa. Transp. Auth.*, 145 F.3d 619, 621 (3d Cir. 1998) (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)). This analysis involves three "threshold inquiries": "(1) whether there is a contractual relationship; (2) whether a change in a law has

11

impaired that contractual relationship; and (3) whether the impairment is substantial." *Id.* If there has been a substantial impairment of a contractual relationship, "the court must further inquire whether the law at issue has a legitimate and important public purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose." *Id.*

The Contract Clause claim in this case falters on the first element. Judge Coffelt argues she has a contractual relationship with GERS based on 3 V.I.C. § 733, under which she acquired a vested right to a judicial service annuity, retroactive to the date she completed her judicial term. *See* ECF No. 122 at 4-6 (arguing that "[w]hen a public employee's rights to retirement benefits become absolutely vested, a contract exists between the employee and the state which cannot be modified by unilateral action on the part of the legislature" (quoting 16A C.J.S. *Constitutional Law* § 549)). GERS denies that Judge Coffelt acquired any contractual rights under § 733, arguing any contractual right to a service retirement annuity could have arisen only based on the retirement system in effect during her tenure as a judge. ECF No. 119 at 7; ECF No. 131 at 5. The Court need not resolve this dispute. Even assuming that if Judge Coffelt acquired a vested right to a judicial service retirement annuity under § 733, it would give rise to a contractual right, Judge Coffelt cannot prevail on her Contract Clause claim because she did not acquire a vested right to a judicial service annuity under the statute as a matter of law.

Although § 733 did not take effect until February 2001, the parties agree the new judicial annuity created therein was to be made available retroactively to judges in service after January 28, 1977. This is clear from subsections (a) and (b), which provide:

> (a) Membership in the system for members of the Judiciary shall be optional, and shall be made available to members of the Judiciary who were in service after January 28, 1977. Salary deductions for new members of the system, at the rate prescribed herein, shall begin from the first payroll period following the filing of

12

>the application with the Administrator and credited service as a member of the system shall begin to accrue. Any new member who desires credit for service rendered as a member of the Judiciary shall contribute to the system 11% of his annual compensation.
>
>(b) Each person who becomes a member of the Judiciary after January 28, 1977, and who is not then a participant by previous appointment, shall automatically become a member of the system and be subject to compensation deductions hereunder, unless, within 90 days from the date he becomes a member of the Judiciary, he filed with the Administrator a written notice of election not to participate.

It is also clear from subsection (j), which states that the provisions of § 733 "with respect to conditions governing membership in the system, rates of contribution, conditions for retirement and rates of annuity, as prescribed by this chapter, shall apply to all membership of the Judiciary in service on January 28, 1977, and to those who become members of the Judiciary thereafter." Subsections (a) and (b), governing membership in the system,[16] are mutually exclusive. Subsection (a) contemplates that members of the Judiciary in service after January 28, 1977 may opt *in* to the system by filing an application with the Administrator, following which salary deductions at the rate of 11% will be made and "credited service as a member of the system shall begin to accrue." In contrast, subsection (b) provides that persons who become members of the Judiciary after the same January 28, 1977 date, and who are not then participants by previous

---

[16] 3 V.I.C. § 702 defines the term "System," for purposes of the Chapter of the Virgin Islands Code in which § 733 appears, to mean "the Employees Retirement System of the Government of the United States Virgin Islands." 3 V.I.C. § 702(a) (2000). This definition applies "unless a different meaning is plainly expressed in the context." *Id.* § 702. At oral argument, Judge Coffelt maintained that, as used in § 733, "system" refers to the system for members of the Judiciary, as opposed to the generally applicable retirement system. Oral Argument at 38:12-38:15, July 18, 2024. The Court agrees. As Judge Coffelt noted, there would be no need to retroactively declare judges members of the general GERS system since they were previously members of that system. *Cf. Gallivan v. Gov't Emps.' Retirement Sys.*, No. 2019-0056, 2025 WL 1125909, at *6 (V.I. Apr. 16, 2025) (characterizing Act No. 6391 as having created "a distinct statutory scheme to provide retirement benefits to members of the Judiciary on different terms than those for other government employees").

13

appointment, will *automatically* become members of the system, subject to salary deductions at the rate of 11%, unless they opt *out* of the system by filing a notice with the Administrator. Judge Coffelt argues that as a person who became a member of the Judiciary after January 28, 1977, she became a member of the system automatically under subsection (b). ECF No. 122 at 4. But applying subsection (b) to Judge Coffelt would render the provision's 90-day opt out period illusory since Judge Coffelt became a judge in 1994, well more than 90 days before § 733 took effect. In the Court's view, Judge Coffelt falls under subsection (a). *See Birdman v. Office of the Governor*, 677 F.3d 167, 176 (3d Cir. 2012) ("[W]hen interpreting a statute, courts . . . should avoid an interpretation which renders an element of the language superfluous." (citation omitted)). Indeed, Judge Coffelt herself appears to have assumed as much, having characterized her initial April 2001 inquiry to GERS as an "Application for Membership in the Judicial Retirement System." Pl.'s Ex. C, ECF No. 123-4.

The Court nevertheless assumes that Judge Coffelt became a member of the system under subsection (a), having submitted an application to Administrator Bryan. Judge Coffelt argues that, as a member of the system who did not accept a refund of her contributions upon leaving the bench, she automatically acquired a vested right to a judicial service retirement annuity on May 12, 2000, when her six-year term on the Superior Court ended, under § 733(e). Subsection (e) provides, in relevant part:

> Notwithstanding any other law, the conditions governing eligibility for service retirement for any member of the Judiciary and the amount of the annuity shall be as stated in this section as follows;
>
>> (1) Vesting in a service retirement annuity shall attach upon completion of one (1) term. Any member shall be eligible for service retirement beginning at age 50 on a judicial annuity equal to the following rates;
>>
>>> (A) after one (1) term in office, 30% of his compensation while in office . . . .

14

3 V.I.C. § 733(e).

While subsection (e) provides for vesting in a judicial annuity upon completion of one term in office, the statute also requires judges who have completed six years of service to make additional contributions if they wish to receive "pension credit" for their service during any period they were not covered by the system. This requirement is set forth § 733(c), which provides, in relevant part:

> Notwithstanding the provisions of this chapter, proportionate contributions shall be made by each member of the Judiciary who has completed six years of service if the member elects to receive pension credit for any period for which such member was not covered by the system. However, the proportionate contributions shall be made retroactively for the respective period of service, with the contributions being the amount of 11% of the members' annual compensation.

3 V.I.C. § 733(c) (2000); *see also id.* § 733(d) (providing the 11% contribution rate "shall apply to service rendered beginning from the first date the member takes the oath of office as a member of the Territorial Court of the Virgin Islands"). As a member of the Judiciary who completed six years of service at a time when she was not covered by the system established in § 733 (which was not yet in effect), Judge Coffelt was required to retroactively make "proportionate contributions" in the amount of 11% of her annual compensation in order to receive pension credit for her service for purposes of § 733. Because she did not make the required contributions, Judge Coffelt is not entitled to pension credit under § 733 and thus could not have acquired a vested right to a service retirement annuity based on that prior service under § 733(e)(1)(A).[17]

---

[17] The Virgin Islands courts addressed vesting in a judicial service retirement annuity under a statute creating a "Tier II" judicial retirement program in *Gallivan v. Government Employees Retirement System*, a case cited by Judge Coffelt. 70 V.I. 475 (V.I. Super. Ct. 2019), *aff'd in part and rev'd in part*, 2025 WL 1125909 (V.I. Apr. 16, 2025). The Tier II statute differed from § 733 in that it authorized the GERS Board "to set both the rate of contribution and the rate of accrual for judicial annuities." *Gallivan*, 2025 WL 1125909, at *7. But like § 733(e), the Tier II statute provided that "[v]esting in a service retirement annuity attaches upon completion of one term." *Id.*

15

Judge Coffelt does not dispute that § 733(c), on its face, required her to make retroactive contributions to receive pension credit for her prior service. Oral Argument at 40:50-41:42, July 18, 2024. Instead, she argues that because GERS originally relied solely on 3 V.I.C. § 733(k) in finding she was not eligible for a judicial annuity, this Court's review should be limited to "whether GERS was correct in retroactively applying § 733(k) to Judge Coffelt" and GERS should be precluded from "justify[ing] its actions based on arguments invented during litigation." ECF No. 132 at 3. She also argues the requirement to make additional contributions retroactively is unenforceable because it violates the separation of powers under Virgin Islands law, as reflected in 4 V.I.C. § 72(c) and as inherent in the Revised Organic Act of 1954.

In arguing the Court's review is limited to the grounds cited by GERS in its original denial letters, Judge Coffelt relies on the *Chenery* doctrine, under which "[a] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *Li v. Att'y Gen.*, 400 F.3d 157, 163 (3d Cir. 2005) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). The Court is not persuaded *Chenery* is applicable here. As GERS notes, Judge Coffelt did not bring this case as an administrative review action but instead alleges a violation of the Contract

---

at *9 (quoting 3 V.I.C. § 770*l*(f)(1)). The plaintiff in *Gallivan* was a magistrate judge who had been appointed to serve on the Superior Court after the Tier II statute took effect but before the GERS Board set the annuity and accrual rates for Tier II members. The issues in the case were whether she was a member of the Tier I (i.e., § 733) or the Tier II system and the extent to which the contribution and accrual rates the Board eventually established midway through her second term could be applied to her. Unlike in this case, there was no question that the plaintiff in *Gallivan* had a vested right to an annuity, as she had become a judge after the Tier II statute took effect and made contributions thereunder. The court thus had no occasion to construe the Tier II statute's counterpart to § 733(c) regarding retroactive contributions.

Clause.[18]  *See* ECF No. 138 at 3.  As such, the issue before the Court is not the propriety of GERS's original justification for its decision but whether a "change in state law has operated as a substantial impairment of a contractual relationship."  *Transp. Workers Union*, 145 F.3d at 621 (citation omitted).  To resolve this issue, the Court must determine—in the first instance—whether Judge Coffelt had a contractual relationship with GERS based on § 733.  Judge Coffelt cites no authority applying *Chenery* in circumstances similar to those present in this case.  On the contrary, the sole case Judge Coffelt cites on this point involved a petition for review of an order of the Bureau of Immigration Appeals (BIA) reviewable under the deferential standard set forth in 8 U.S.C. § 1252(b)(4)(B).  *See Li*, 400 F.3d at 162.  Applying *Chenery* in that case, the Third Circuit found the BIA's decision was not supported by substantial evidence and remanded the case to the BIA for further proceedings.  *Id.* at 168-70.  Notably, although Judge Coffelt invokes *Chenery*, she does not seek remand to the agency (GERS), the typical remedy when an agency's action cannot be sustained based on the grounds on which it relied.  *See FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 928 (2025) (noting a necessary implication of *Chenery* "is that the better course when an agency error is identified is for the reviewing court, 'except in rare circumstances,' 'to remand to the agency for additional investigation or explanation'" (citation omitted)).[19]

---

[18] Judge Coffelt argues GERS should be precluded from taking the position that this is not an administrative review case as it previously moved to dismiss this case based in part on her failure to exhaust administrative remedies under 3 V.I.C. § 715(b).  ECF No. 139 at 4 n.2.  Because the motion raised factual issues inappropriate for resolution at the motion to dismiss stage, the Court denied it without prejudice, and GERS has since abandoned its position that exhaustion was required.  The Court perceives no bar to GERS's change in position in these circumstances.

[19] The Court also notes that even if *Chenery* were applicable, this case would likely fall within an exception, given the Court's conclusion that Judge Coffelt did not acquire a vested right to an annuity under § 733 as a matter of law.  *See Pa. Dep't of Human Servs. v. United States*, 897 F.3d 497, 506 n.5 (3d Cir. 2018) ("*Chenery* reversal is not necessary where . . . the agency has come to a conclusion to which it was bound to come as a matter of law, albeit for the wrong reason, and where . . . the agency's incorrect reasoning was confined to that discrete question of law and

17

As to the separation of powers, 4 V.I.C. § 72(c) provides, in relevant part, that "[n]o judge's compensation shall be reduced during his term of office without his consent." The term "compensation" has been interpreted to include not only judges' salaries but also their pension contributions and benefits. *See Joseph v. Gov't of the V.I.*, 576 F. Supp. 1335, 1339 (D.V.I. 1983); *Gallivan*, 70 V.I. at 497. In *Gallivan*, for example, the Virgin Islands Superior Court held that "because an increase in a judiciary member's [pension] contribution rate reduces the member's compensation, . . . the pension contribution rate cannot be increased during a [judge's] term" under § 72(c).[20] 70 V.I. at 497. And in *Joseph*, the District Court of the Virgin Islands relied in part on § 72(c) in holding a judge's right to an increased pension benefit under a statute enacted during his tenure could not be taken away.[21] 576 F. Supp. at 1339; *see also Gallivan*, 2025 WL 1125909, at *10 ("In the Virgin Islands, a judicial pension constitutes deferred compensation, the terms of

---

played no part in its discretionary determination." (citation omitted)); *Building & Constr. Trades Dep't, AFL-CIO v. U.S. Dep't of Labor Wage Appeals Bd.*, 829 F.2d 1186, 1189 (D.C. Cir. 1987) ("The *Chenery* rule . . . does not apply when the question presented is one of statutory construction.").

[20] Although the Virgin Islands Supreme Court recently reversed the Superior Court's decision in *Gallivan* in part, this aspect of the Superior Court's decision was not appealed. *See Gallivan*, 2025 WL 1125909, at *3 (noting the appeal "only challenge[d] two aspects of the Superior Court's decision: its holding that [Judge Gallivan] is a Tier II member, and its conclusion that she is only entitled to a 20-percent annuity upon completion of her second four-year term as a magistrate judge").

[21] The statute at issue in *Joseph* established a Judges Pension Fund that increased judges' pension benefits but was repealed barely a month after it took effect. A group of judges who either were in office when the statute was enacted or took office while it was in effect sued to obtain the benefit of the more generous pension the statute created, to which they claimed to have a vested right. The district court held the judges were entitled to the increased pension benefits, in part based on § 72(c). Notably, the court also held that to obtain these benefits, the judges would have to make an additional two percent contribution, retroactive to the statute's effective date (for the judges in office when the statute was enacted) or the date they took office, to account for its higher contribution rate. The court did not address whether applying the new pension program's rate increase to sitting judges during their term of office violated § 72(c).

which 'vest under legislation in effect upon the commencement of service' and cannot be involuntarily reduced during the term of the judicial officer." (quoting *Joseph*, 576 F. Supp. at 1340)).

Consistent with *Gallivan*, a 30(b)(6) representative for GERS conceded at deposition that under 4 V.I.C. § 72(c), a pension contribution increase that occurs during a judge's term in office may not be applied during that term. Caines-Sasso Dep. 45-46, ECF No. 133-3 (stating a change to the percentage rate made while a judge is on the bench "does not impact that judge until after the term that they're presently serving expires"). Judge Coffelt argues this is precisely what GERS is attempting to do here by requiring her to retroactively pay back compensation received for judicial service. ECF No. 132 at 4.

The Court disagrees. Unlike in *Gallivan* and *Joseph*, the statutory change in pension contributions and benefits in this case did not occur until months after Judge Coffelt left the bench. GERS is not seeking to reduce any pension benefits to which Judge Coffelt would be entitled under the retirement system that was in effect at all times during her judicial tenure. As noted, Judge Coffelt does not qualify for a service annuity under that system because she lacks the ten years of credited service required. And GERS does not dispute that Judge Coffelt remains eligible for a return of her contributions. Nor is GERS seeking to increase Judge Coffelt's contribution rate under the former system. Instead, GERS maintains that to avail herself of the more generous annuity provided by 3 V.I.C. § 733, which was enacted after her judicial service concluded, Judge Coffelt must make the additional contributions required under that statute. The Court is not persuaded that as applied to Judge Coffelt, who was no longer a judge when § 733 was enacted, the requirement to make these additional contributions amounts to a reduction of her compensation

during her term of office, in violation of § 72(c), or otherwise violates separation of powers principles. Notably, Judge Coffelt cites no authority holding otherwise.

Based on the undisputed facts, Judge Coffelt did not acquire a vested right to a judicial service retirement annuity under § 733 as a matter of law.[22] Accordingly, GERS's motion for summary judgment will be granted and Judge Coffelt's motion will denied.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[22] Because the Court concludes Judge Coffelt did not acquire a vested right to a judicial service retirement annuity under § 733, it need not address Judge Coffelt's argument that denying her a "vested retirement service annuity" violates the Internal Revenue Code's pre-ERISA vesting requirements and thereby imperils the pensions of all public employees in the Virgin Islands. *See* ECF No. 132 at 9-11. And because the Court resolves the parties' motions on this ground, it need not address GERS's alternative argument that Judge Coffelt's failure to file a written application for an annuity under 3 V.I.C. § 705(a) independently bars relief.